IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ABDUL HAQ GHAFOORI,

          Plaintiff,

v.

JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security, *et al.*,

          Defendants.

NO. C09-5484 TEH

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on April 19, 2010, on cross-motions for summary judgment. Plaintiff Abdul Haq Ghafoori ("Plaintiff") brings this action under the Administrative Procedure Act against Defendants Janet Napolitano, in her official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"), and Michael Aytes, in his official capacity as acting Deputy Director of U.S. Citizenship and Immigration Services ("USCIS") (collectively, "Defendants"). Plaintiff, an asylee from Afghanistan, contends that Defendants acted contrary to regulation by relying on evidence undisclosed to him to deny his petition to obtain derivative immigration benefits for his daughter. Defendants seek dismissal of this action. For the reasons set forth below, Plaintiff's motion is GRANTED, and Defendants' motion is DENIED.

**BACKGROUND**

Plaintiff and his wife applied for asylum in the United States on May 4, 2000, after fleeing their native Afghanistan. They were granted asylum on November 13, 2000, at the San Francisco asylum office of the Immigration and Naturalization Service ("INS" or "the

1  Service").[1]  Their daughter, Eida Ghafoori ("Eida"), had been unable to travel to the United
2  States with her parents and remained in Peshawar, Pakistan, where the family resided after
3  leaving Afghanistan in the early 1990s.[2]

4  When an asylee's child is outside the United States, the Immigration and Nationality
5  Act ("INA") allows the child to "follow to join" and "be granted the same status" as the
6  asylee.  8 U.S.C. § 1158(b)(3); 8 C.F.R. § 208.21(d).  A person must be "unmarried" and
7  "under twenty-one years of age" to satisfy the INA's definition of "child" and qualify for
8  derivative benefits.  8 U.S.C. § 1101(b)(1).  Eligibility for following-to-join benefits is based
9  on the child's age at the time the parent applied for asylum.  *Id.* § 1158(b)(3)(B).  "[I]f the
10 alien attained 21 years of age after [the asylum] application was filed but while it was
11 pending," he or she "shall continue to be classified as a child for purposes of" derivative
12 benefits.  *Id.*

13 On April 15, 2002, Plaintiff filed an I-730 "Refugee/Asylee Relative Petition" on
14 Eida's behalf, which declared that she was born on July 6, 1986 – making her 13 years of age
15 when Plaintiff applied for asylum.  "The burden of proof is on the principal alien to establish
16 by a preponderance of the evidence that any person on whose behalf he or she is making a
17 request [for derivative benefits] is an eligible spouse or child."  8 C.F.R. § 208.21(f); *see also*
18 *id.* § 103.2(b)(1) ("An applicant or petitioner must establish that he or she is eligible for the

---

[1] After Plaintiff was granted asylum, the functions of the INS were subsumed by the Department of Homeland Security ("DHS"), which was established pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).  U.S. Citizenship and Immigration Services ("USCIS"), the division of DHS that oversees asylum claims and other lawful immigration, became responsible for Plaintiff's case following the agency restructuring.  The Court will therefore refer to both the INS and USCIS as "the Service."

[2] Facts are drawn from the Certified Administrative Record ("C.A.R.") (Doc. 10), as well as from documents authenticated in the declarations of Plaintiff's former and current counsel, Gail Nevius Abbas and Tyler Gerking.  Defendants argue that reliance on the declarations is inappropriate as the Court's review should be limited to the record before the agency.  Although Defendants are correct that "post-decision information" should not be used "as a new rationalization either for sustaining or attacking" an agency's decision, *Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980), the Court does not rely on the declarations for that purpose.  Rather, the declarations document counsel's correspondence with the Service and related agencies in an effort to resolve this matter short of litigation, and the Court considers them only in that context.

requested benefit at the time of filing the application or petition."). Where a "required document, such as a birth or marriage certificate, does not exist or cannot be obtained," the regulations require a petitioner to "demonstrate this and submit secondary evidence, such as church or school records, pertinent to the facts at issue." 8 C.F.R. § 103.2(b)(2)(i). If neither primary nor secondary evidence can be secured, a petitioner must "submit two or more affidavits" to overcome their unavailability. *Id.* Plaintiff was unable to obtain a birth certificate for Eida, and church, medical, and school records were likewise unavailable.[3] Plaintiff therefore supported the I-730 petition with copies of Eida's passport,[4] a letter from her high school principal stating when she graduated, a family friend's affidavit attesting to the year she was born, another affidavit establishing that Plaintiff and his wife were married in 1954, money transfer documents evidencing Plaintiff's continued financial support of his daughter, and family photographs.

On March 13, 2003, the Service notified Plaintiff that the documentation submitted was insufficient to warrant favorable consideration of his petition for Eida, as two sworn affidavits are necessary to establish the date and place of a birth or marriage, and Plaintiff had submitted only one for each event. Plaintiff therefore augmented the petition with two additional declarations, one attesting to Eida's birth, and the other to his marriage. The Service approved the petition on June 19, 2003 at its Nebraska Service Center, and forwarded it to the American Embassy in Islamabad, Pakistan for the issuance of a visa to Eida.

After Eida appeared at the embassy for visa processing, that office referred her to the Aziz Medical Center in Islamabad for a "bone-age assessment," which was meant "to give a more accurate picture of the true age of the applicant." Certified Administrative Record ("C.A.R.") (Doc. 10) at 5-6. Based on x-rays taken on May 11, 2004, Dr. Ahmed Raza Jan

---

[3] The U.S. Department of State's Foreign Affairs Manual noted that "[p]rotracted wartime conditions and the absence of an established central authority have made document availability and reliability very uncertain" in Afghanistan. C.A.R. at 64.

[4] At hearing, Defendants asserted that the document described in Plaintiff's motion papers as Eida's passport is in fact a refugee travel document, which does not carry the same weight as a passport. This distinction is inconsequential for purposes of these motions.

concluded that Eida "is 25 years of age or more." *Id.* at 6.  The DHS office at the embassy in Islamabad therefore determined that Eida "was over 21 years of age at the time of filing" in the year 2000, and returned the I-730 petition to the Nebraska Service Center "for possible institution of revocation." *Id.* at 5.

The Service moved to reopen the petition, issuing a notice of intent to deny on September 21, 2004, which informed Plaintiff that it was "in possession of adverse information that you may be unaware of regarding" the I-730 petition.  C.A.R. at 3.  The notice explained the results of the bone-age assessment and enclosed the letter from Dr. Ahmed Raza Jan; the x-ray on which he relied was not included.  Plaintiff was given thirty days to submit a written rebuttal.

Plaintiff's then-counsel, Gail Nevius, responded in an October 15, 2004 letter by requesting copies of the x-rays and medical records on which the doctor had relied in making his assessment.  She also asked that the deadline for filing a rebuttal be extended by six months, to allow time for the records to be obtained and analyzed.  Plaintiff attempted to retrieve the medical records by submitting Freedom of Information Act requests to the Nebraska Service Center and the U.S. Embassy in Islamabad, neither of which produced the requested documentation.  Plaintiff ultimately declined to submit a substantive rebuttal and stood on his previous submissions.  On February 14, 2005, the petition was denied both as abandoned and based on the record.  C.A.R. 1-2; 8 C.F.R. § 103.2(b)(13)(i).  Although that decision was unappealable, the denial letter notified Plaintiff that he could "submit a new petition with the appropriate documentation" to the Service if he believed that he could "overcome the grounds for denial."  C.A.R. at 2.

Plaintiff then engaged his current counsel, Tyler Gerking, and renewed his efforts to obtain the x-rays. The office of Congressman Pete Stark contacted USCIS's Nebraska Service Center, which informed him that it did not have the records and recommended contacting the Aziz Medical Center, where the x-rays were taken.  Counsel did so, receiving a response from Dr. Ahmed Raza Jan explaining that their "standard operating procedure" is to send "all x-ray films . . . to the consular section along with the conclusion letter" so that "if

4

they require a second opinion they may not have to ask the applicant to undergo x-rays again and thus expose them to unnecessary radiations." Gerking Decl., Ex. C. Counsel then contacted the USCIS office at the U.S. Embassy in Islamabad, which notified him that all USCIS files had been moved to its New Delhi office. When counsel approached the New Delhi office, his inquiry was – after a year-long delay – forwarded to the consular section of the U.S. Embassy in Islamabad. That office informed counsel that the USCIS office at the Islamabad embassy had closed in October 2007, and that the consular section had no record of having received the petition from USCIS. The embassy recommended contacting the USCIS office where the petition was originally filed – i.e. the Nebraska Service Center, where the search began. Plaintiff's counsel therefore concluded that further requests to obtain the x-rays would be futile.

Plaintiff filed this action for declaratory judgment and injunction on November 18, 2009, asking this Court to order Defendants to approve the petition or, in the alternative, to remand to USCIS for an investigation into the petition. Plaintiff moved for summary judgment on February 16, 2010, arguing that Defendants violated their own regulations by denying his petition based on undisclosed evidence.[5] Defendants opposed the motion and cross-moved for summary judgment on March 15, 2010. Defendants argue that Plaintiff failed to exhaust administrative remedies and that the Service complied with regulations in reaching its decision, which must withstand the deferential standard of review for agency action.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby,*

---

[5] In his papers, Plaintiff also raised a second basis for summary judgment in his favor: that the agency's reliance on the bone scan for its denial was arbitrary and capricious. At hearing, however, Plaintiff narrowed his focus by stating that the only question before the Court is whether the Service violated its own regulation. Defendants agreed that this is the only question the Court should decide on this motion.

5

*Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256. Questions of law are "suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 310 F.3d 1188, 1194 (9th Cir. 2002).

**DISCUSSION**

Plaintiff brings this action pursuant to the Administrative Procedure Act ("APA"),[6] which subjects to judicial review any "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A reviewing court "shall . . . hold unlawful

---

[6] This action is also brought pursuant to the Declaratory Judgment Act ("DJA"), which provides that a court "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Defendants assert that Plaintiff's claims should be evaluated under the APA rather than the DJA, because "the relief sought is essentially the same" under both statutes. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (discussing APA and the Mandamus and Venue Act of 1962). Plaintiff, in his motion, does not even reference the DJA. The Court will therefore assess Plaintiff's claims only under the APA.

6

and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). This "standard of review is a narrow one," demanding a "searching and careful" inquiry that assesses "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977).[7] "The court is not empowered to substitute its judgment for that of the agency." *Id.*

Defendants argue that the complaint should be dismissed based on Plaintiff's failure to exhaust administrative remedies. Plaintiff asks the Court to find that the Service violated its own rule by failing to provide copies of the x-rays on which its decision was based. The Court will address each of these arguments in turn.

## I.   Exhaustion

Defendants argue that this action should be dismissed because Plaintiff did not submit a rebuttal to the Service's intent to deny letter, and therefore failed to exhaust his administrative remedies. The Service denied the petition as abandoned and also based on the record. C.A.R. at 1-2; *see also* 8 C.F.R. § 103.2(b)(13) (allowing petition to be "summarily denied as abandoned, denied based on the record, or denied for both reasons" when no response is received). However, whether and how Plaintiff responded to the notice of intent to deny is a matter of dispute.

Plaintiff's original counsel, Ms. Nevius, attests that she requested a six-month extension on October 15, 2004, in a letter to the Acting Director of the Nebraska Service Center, Gregory Christian, who signed the notice of intent to deny. Ms. Nevius's letter

---

[7] Plaintiff argues that this Court may also set aside the Service's action because it was "unsupported by substantial evidence," which is another standard for overturning agency action under the APA. 5 U.S.C. § 706(2)(E). However, the Supreme Court has held that "[r]eview under the substantial-evidence test is authorized only when the agency action is taken pursuant to a rulemaking provision of" the APA itself, "or when the agency action is based on a public adjudicatory hearing." *Overton Park*, 401 U.S. at 414. That standard is therefore inapplicable here.

7

explicitly states that it "responds to" the notice of intent to deny. Nevius Decl., Ex. D. In it, she requests an extension and copies of the medical records, and asks the Service "to reconsider" and "grant Eida derivative asylum" based on the record already submitted. *Id.* She also cites 8 C.F.R. § 103.2(b) as requiring that the medical records be made available. Defendants dispute that such a letter was ever received as it is not in the certified administrative record.

When a petitioner is given the opportunity to rebut derogatory evidence, "[a]ny explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding." 8 C.F.R. § 103.2(b)(16)(i). It therefore appears that the October 15, 2004 letter – which *explained* why the x-rays were necessary to Plaintiff's rebuttal – was erroneously omitted from the administrative record. Since Plaintiff did not "fail[] to respond" to the notice of intent to deny, summary denial of the petition as "abandoned" was inappropriate, *id.* § 103.2(b)(13)(i), and Plaintiff's failure to respond is not a basis for concluding that he failed to exhaust administrative remedies.

Furthermore, Plaintiff's submission of a rebuttal is not a prerequisite to review by this Court. In *Darby v. Cisneros*, the Supreme Court addressed for the first time the requirement that available administrative remedies be exhausted under the APA. The Court focused its inquiry on 5 U.S.C. § 704, which provides "that judicial review is available for 'final agency action for which there is no other adequate remedy in a court.'" *Darby v. Cisneros*, 509 U.S. 137, 143 (1993) (quoting 5 U.S.C. § 704). That section further provides that, "[e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application . . . for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704. After examining those provisions, the Court concluded that, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."

8

*Darby*, 509 U.S. at 154.  Requiring litigants "to exhaust optional appeals as well" would "be inconsistent with the plain language of" the statute.  *Id.* at 147.

The denial of Plaintiff's petition was not appealable.  8 C.F.R. § 208.21(e).  Even if Plaintiff did not submit any rebuttal to the notice of intent to deny, that failure merely affected the record upon which the Service based its final decision.  Once the Service had made its decision, it required no further action by Plaintiff as a prerequisite to judicial review.  Plaintiff's failure to proffer a substantive rebuttal to the notice of intent to deny would not, by itself, be an appropriate basis for dismissal.

## II.     Violation of Regulation

Plaintiff claims that the Service defied its own regulations by failing to give Plaintiff access to the x-rays that were the basis for Dr. Ahmed Raza Jan's conclusion regarding Eida's age.  The regulation on which Plaintiff relies is 8 C.F.R. § 103.2(b)(16)(ii), which provides that a "determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner."  Defendants respond that nothing in the regulations requires the Service to provide the actual x-ray films on which the doctor relied.

In the Ninth Circuit, a claim "that an agency has violated its own regulation . . . is subject to judicial review," but relief may only be granted where the claimant can "show that he was prejudiced by the agency's mistake."  *Kohli v. Gonzales*, 473 F.3d 1061, 1066 (9th Cir. 2007).  The APA also provides an independent basis for reviewing "[a]gency violations of their own regulations," because such violations "may well be inconsistent with the standards of agency action which the APA directs the courts to enforce."  *United States v. Caceres*, 440 U.S. 741, 754 (1979).  The APA allows a district court to review a "preliminary, procedural, or intermediate agency action or ruling" in its review of a final agency action, 5 U.S.C. § 704, and empowers the court to set aside any such action that is "not in accordance with law," *id.* § 706.  "A regulation has the force of law; therefore, an agency's interpretation of a statute in a manner inconsistent with a regulation will not be

9

enforced." *Nat'l Med. Enters. v. Bowen*, 851 F.2d 291, 293 (9th Cir. 1988). Judicial review of Plaintiff's claims that the Service violated its own regulations is therefore consistent with Ninth Circuit precedent and the APA.

"[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous statute is controlling . . . unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). However, deference to an agency's interpretation "is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). Deferring to an agency's contrary interpretation of an unambiguous regulation "would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Id.* "Courts grant an agency's interpretation of its own regulations considerable legal leeway." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002).

Two regulatory provisions are in play here. The notice of intent to deny was governed by 8 C.F.R. § 103.2(b)(8)(iv), which requires that the notice "be in writing" and "specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." The Service's notice did so: it stated that Eida had been referred "to a physician for a bone-age assessment," which "was performed to give a more accurate picture of the true age of the beneficiary" and determined that she "was over 21 at the time of filing." C.A.R. at 3. The notice enclosed the doctor's letter, which listed the five x-rays taken, explained the basis for the decision (that the "epiphyses of elbow, wrist, iliac crest and shoulder joint are united," and the "epiphysis of medial end of clavicle has also fused"), and concluded that Eida was "25 years of age or more." *Id.* at 6. Although the notice did not enclose the x-rays themselves, all the regulation requires is "sufficient information to respond." 8 C.F.R. § 103.2(b)(8)(iv). The "maximum response time" is thirty days, and "[a]dditional time . . . may not be granted." *Id.* The Service gave Plaintiff the maximum thirty days to respond, and was precluded by regulation from granting the

10

six-month extension that Plaintiff later requested.  The Service therefore complied with the requirements for the notice of intent to deny.

A second regulation, governing the "[i]nspection of evidence," provides that a petitioner "shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in" four subsequent paragraphs.  8 C.F.R. § 103.2(b)(16).  The first of those exceptions is for "derogatory information" unknown to the petitioner; when an adverse decision will be based on such information, the petitioner "shall be advised of this fact and offered an opportunity to rebut the information . . . , except as provided in" the next three paragraphs.  *Id.* § 103.2(b)(16)(i).  The *following* paragraph – characterized as an exception to both paragraphs previously cited – is the provision that Plaintiff claims the Service violated:  "A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner, except as provided in paragraph (b)(16)(iv) of this section."  *Id.* § 103.2(b)(16)(ii).  The last two paragraphs permit reliance on classified information, which a petitioner is not permitted to access.  *Id.* § 103.2(b)(16)(iii)-(iv).

Defendants stress that § 103.2(b)(16)(ii) is an "exception" to disclosure.  The regulation's pattern of exceptions is puzzling, because there is nothing inconsistent between paragraph (ii) and the previous two provisions from which it is excepted.  Allowing the petitioner to "inspect the record," § 103.2(b)(16), is consistent with advising him of derogatory information, § 103.2(b)(16)(i), and relying only on "information contained in the record" to determine statutory eligibility, § 103.2(b)(16)(ii).  The pattern of "exceptions" can be understood only when read collectively:  paragraphs (i) and (ii) set out the standards for disclosure, whereas (iii) and (iv) limit disclosure where decisions are based on classified information.  Thus, although paragraph (ii) is characterized as an exception to the general disclosure rule, it in fact requires full disclosure of the information on which a determination of statutory eligibility is based.

Defendants also attempt to draw support from a handful of circuit and administrative decisions interpreting 8 C.F.R. § 103.2(b)(16)(i).  In *Hassan v. Chertoff*, the Ninth Circuit

addressed a petitioner's claim that his due process rights were violated by the government's failure to comply with paragraph (i) in denying, for national security reasons, his application to adjust status. The court dismissed that argument: "Hassan was aware of the information against him. He was questioned about his involvement in the terrorist organization. He was given the opportunity to explain his association during the course of that questioning. The regulation that Hassan cites requires no more of the government." *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). The Seventh Circuit, also considering paragraph (i), found that "the regulation does not require USCIS to provide, in painstaking detail, the evidence . . . it finds." *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (9th Cir. 2009). The Board of Immigration Appeals has similarly held – in unpublished opinions cited by Defendants – that paragraph (i) does "not place upon USCIS a requirement that the actual documents be provided to a petitioner in order to comply with due process." *In re Liedtke*, 2009 WL 5548116 (BIA Dec. 31, 2009); *see also In re Firmery*, 2006 WL 901430 (BIA Feb. 28, 2006) (concluding that there is "no statutory or regulatory requirement that" DHS turn over "the reports which formed the basis for denying" a visa petition).[8] However, those opinions all deal with paragraph (i), which Plaintiff does not allege was violated.

Paragraph (ii), however, imposes the unambiguous requirement that the information be *disclosed* to the petitioner. In Plaintiff's case, the Service failed to do so. Defendants argue that the Service complied because its decision was based on the doctor's letter interpreting the x-rays, and not the x-rays themselves. However, that reading is irreconcilable with the regulations. Divorcing the doctor's analysis from the medical records on which he relied creates an impossible burden for any petitioner attempting to rebut his conclusion. In the absence of the x-rays it interprets, the doctor's letter is unimpeachable; it allows for no second opinion, and therefore no meaningful rebuttal. The right to rebut that

---

[8] Although the BIA's *Firmery* ruling cites 8 C.F.R. §§ 103.2(b)(16)(i) and (ii), the discussion makes clear that it considered only paragraph (i): "[O]ur reading of the regulations confirms that an alien must only be 'advised' of the derogatory information which will be 'disclosed' to her and that she then be given an opportunity to rebut the evidence once the DHS has indicated an intent to deny the application." *In re Firmery*, 2006 WL 901430 (BIA Feb. 28, 2006).

12

the regulations explicitly confer would be nullified. On a literal level, the Service may be correct that it – having no medical expertise of its own – relied only on the doctor's letter. However, its determination can only be based on information that is "in the record of proceeding," and the information on which it relied – an analysis of x-rays – is incomplete without the x-rays analyzed. The Service therefore violated its own regulations by failing to disclose the x-rays on which it relied – by way of the doctor's assessment – in denying Plaintiff's petition.

The Ninth Circuit's ruling in *Kohli v. Gonzales* requires a showing of prejudice before relief can be granted based on an agency's violation of its own regulation. 473 F.3d 1061, 1066 (9th Cir. 2007). The clearest prejudice would be a showing that Plaintiff's petition would have been granted but for the violation or, in other words, that the failure to disclose resulted in the denial of the petition. It is impossible to make such a showing because Plaintiff – due to the Service's violation – does not have access to the x-rays, and cannot predict what they may reveal. Since the Service's violation deprived Plaintiff of the ability to make a meaningful rebuttal, that is itself sufficient prejudice to justify relief.[9]

## CONCLUSION

The Court concludes that the Service violated 8 C.F.R. § 103.2(b)(16)(ii) by deciding Plaintiff's I-730 petition based on an evaluation of x-rays that were not disclosed to Plaintiff. Plaintiff's motion for summary judgment is therefore GRANTED, and Defendants' motion is DENIED.

Plaintiff requests that the Court remand this action to the Service with orders that the initial decision granting derivative benefits be reinstated. Such a remedy is inappropriate; this Court has no basis for assessing whether Eida does in fact meet the requirements for

//

---

[9] Furthermore, it is unclear whether a showing of prejudice is even necessary here. The APA, which provides an independent basis for relief where an agency defies its own regulations, imposes no such requirement.

13

derivative asylum status.  Instead, this matter is remanded to the Service with orders that it reconsider the I-730 petition and base its determination of statutory eligibility only on evidence disclosed to Plaintiff.

**IT IS SO ORDERED.**

Dated:   5/4/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT